1   Victor A. Sahn (CA Bar No. 97299)
      victor.sahn@gmlaw.com
2   Alan G. Tippie (CA Bar No. 89587)
      alan.tippie@gmlaw.com
3   Rilyn Carnahan (Fla Bar No. 614831)
      rilyn.carnahan@gmlaw.com
4   Steve Burnell (CA Bar No. 286557)
      steve.burnell@gmlaw.com
5   **GREENSPOON MARDER LLP**
    333 South Grand Avenue, Suite 3400
6   Los Angeles, California 90071
    Telephone: 213.626.2311
7   Facsimile: 954.771.9264

8   Attorneys for 9300 Wilshire LLC, a Delaware
    Limited Liability Company
9

10                  **UNITED STATES BANKRUPTCY COURT**

11                  **CENTRAL DISTRICT OF CALIFORNIA**

12                       **LOS ANGELES DIVISION**

| | |
|---|---|
| 13  In re | Case No. 2:23-bk-10918-ER |
| 14  9300 WILSHIRE, LLC, a Delaware Limited Liability Company, | Chapter 11 |
| 15        Debtor. | Adversary No. _____ |
| 16 _____ | **COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND OBJECTION TO PROOF OF CLAIM OF AES REDONDO BEACH, LLC** |
| 17  9300 WILSHIRE, LLC, for itself and on behalf of 1112 INVESTMENT COMPANY, | |
| 18  LLC; E.D. FLORES, LLC; 9300 WILSHIRE FEE, LLC; DAVID DROMY; 1650 | Date:  [To be Set by Court] |
| 19  VETERAN, LLC; OUTDOOR BILLBOARD COMPANY, LLC; BH KARKA LLC; 6TH | Time: [To be Set by Court] |
| 20  STREET INVESTMENT COMPANY, LLC; 505 INVESTMENT COMPANY, LLC; SLH | Place:    255 East Temple Street |
| 21  FUND, LLC; and PEAK ALCOTT, LLC, | Los Angeles, CA 90012 |
| 22        Plaintiff, | The Hon. Ernest Robles |
| 23        vs. | |
| 24  AES-REDONDO BEACH, LLC, | |
| 25        Defendant. | |
| 26 _____ | |
| 27 | |
| 28 | |

AGT 54365142v1

**TO THE HONORABLE ERNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE, TO AES-REDONDO BEACH, LLC, AND TO INTERESTED PARTIES:**

Comes Now, 9300 Wilshire, LLC, the Chapter 11 Debtor and Debtor in Possession, for itself and on behalf of 1112 Investment Company, LLC, Ed Flores, LLC, 9300 Wilshire Fee, LLC, David Dromy, 1650 Veteran, LLC, Outdoor Billboard, LLC, BH Karka LLC, 5TH Street Investment Company, LLC, 505 Investment Company, LLC, SLH Fund, LLC, and Peak Alcott, LLC, and hereby complains of Defendant AES-Redondo Beach, LLC, as follows:

**JURISDICTION AND VENUE**

1.    9300 Wilshire, LLC ("Plaintiff" or "9300 Wilshire") is a Chapter 11 Debtor in Possession before this Court.  Plaintiff filed a voluntary petition under Chapter 11 of title 11, United States Code, on February 21, 2023 which commenced the instant chapter 11 case ("Case").

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O) and is a proceeding arising in and/or related to the Bankruptcy Case.

3.    Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.  Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.    Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

**THE PARTIES**

5.    Plaintiff is a Delaware limited liability company and brings this action for itself and on behalf of 1112 Investment Company, LLC, a California limited liability company; E.D. Flores, LLC, a California limited liability company;  9300 Wilshire Fee, LLC, a Delaware limited liability company; David Dromy, an individual; 1650 Veteran, LLC, a California limited liability company; Outdoor Billboard Company, LLC, a California limited liability company; BH Karka LLC, a California limited liability company; 5TH Street Investment Company, LLC, a California limited liability company; 505 Investment Company, LLC, a California limited liability company; SLH Fund, LLC, a California limited liability company; and Peak Alcott, LLC, a California limited

1  liability company (hereinafter, with Plaintiff, the "Joint Owners").  Joint Owners are tenants in

2  common owners of Real Property (defined below) in which Plaintiff is the Tenant in Common (TIC)

3  manager pursuant to a tenancy in common agreement with the non-Debtor Joint Owners.  In that

4  capacity, Plaintiff has authority to pursue the claims asserted herein on behalf of the Joint Owners.

5       6.     AES-Redondo Beach, LLC ("AES") is one of the secured creditors in this Case.  AES

6  purports to hold a claim secured by the real property located at 1100 N. Harbor Drive, Redondo

7  Beach, California (the "Real Property").  The Real Property is one of the properties owned or in

8  which the Debtor holds an interest in this Case.  AES is affiliated with "The AES Corporation", a

9  Delaware Corporation having its main offices in Arlington, Virginia.  It is publicly traded on the

10  New York Stock Exchange under the symbol "AES".  According to its Form 10-K filed on March

11  1, 2023, AES had revenue in 2022 of $12.6 Billion and assets of $38 Billion.  It has a global

12  workforce of 9,100 employees and serves 2.6 Million Utility customers.  AES maintains businesses

13  in the United States, Puerto Rico, El Salvador, Mexico, Central America and the Caribbean, Chile,

14  Columbia, Argentina, Brazil, Europe and Asia.  It owns six utility companies and 47 generation

15  facilities like the one that operates in Redondo Beach on the Real Property.  In California, AES

16  Southland is one of the largest generation operators in California by aggregate installed capacity,

17  with an installed gross capacity of 3,799 MW at the end of 2022.  The five coastal power plants

18  comprising AES Southland are in areas that are critical for local reliability and play an important

19  role in integrating the increasing amounts of renewable generation resources in California.  AES

20  Southland is composed of three once-through cooling ("OTC") power plants, two combined cycle

21  gas-fired generation facilities and an interconnected battery-based energy storage facility.

22  Southland comprises AES Huntington Beach, LLC, AES Alamitos, LLC, and AES Redondo Beach

23  ("Southland OTC units")." (AES Form 10-K, pg. 21 under "AES Southland").  According to AES'

24  Form 10-K, it is obligated to cease operations at the power plant on the Real Property on December

25  31, 2023.   AES' Form 10-K states on page 52 in the fourth full paragraph, "AES Southland's current

26  plan is to comply with the SWRCB OTC Policy by shutting down and permanently retiring all

27  existing generating units at AES Alamitos, AES Huntington Beach, and AES Redondo Beach that

28  utilize OTC by the compliance dates included in the OTC Policy. The SWRCB reviews the

1  implementation plan and latest information on OTC generating unit retirement dates and new

2  generation availability to evaluate the impact on electrical system reliability and OTC compliance

3  dates for specific units." *See* Form 10-K of The AES Corporation for fiscal year ended December

4  31, 2022. Report filed March 1, 2023. The link to the Form 10-K may be found at –

5  https://d18rn0p25nwr6d.cloudfront.net/CIK0000874761/3be55db1-bf7e-407a-8062-

6  6a6b8d9dd2f5.pdf.

7  **BACKGROUND, STATEMENT OF FACTS AND RELEVANT AGREEMENTS**

8      7.    Purchase and Sale Agreement By and Between AES Redondo Beach, L.L.C., and

9  New Commune DT LA, LLC or Assigns Dated October 5, 2018:

10     a.    On or about October 5, 2018, New Commune DT LA, LLC, a California

11  limited liability company ("Purchaser") entered into an agreement to purchase from AES Redondo

12  Beach, LLC, a Delaware limited liability company ("AES") the real property located at 1021 N

13  Harbor Drive, Redondo Beach, California (the "Real Property").  A true and correct copy of the

14  purchase agreement ("Purchase Agreement") is attached hereto as **Exhibit "A"** and is incorporated

15  herein by this reference.

16     b.    The purpose of the acquisition was to redevelop the Real Property.  At the

17  time  purchased, the Real Property was being operated as a 1300 Megawatt natural gas fire

18  generating facility by an affiliate of AES.  As a result, Purchaser and later the Joint Owners leased

19  the property back to AES under an agreement which provided, inter alia, for monthly rental

20  payments.  The Real Property which is presently operated by AES as a 840 Megawatt natural gas

21  fire generating facility shall be referred to as the "Power Generating Facility" or "Facility."  In or

22  around year end 2020, AES shut down plant 8 at the Facility for necessary air credits so that it could

23  reopen its Alamitos plant in February 2021.  Since that closure, AES has only operated at 840 MW

24  using plants 5-7 on the Real Property.

25     c.    Plaintiff and AES (sometimes collectively referred to as the "Parties")

26  anticipated the Facility would be retired prior to the anticipated closing date of the sale under the

27  Purchase Agreement.  Despite that anticipation, the Parties also contemplated the possibility the

28  Facility would not be retired before closing and, as a consequence, entered into a ground lease

4

("Ground Lease") pursuant to which Purchaser, as lessor, and AES, as lessee, would lease back the Real Property underlying the Facility until such time as the Facility was retired. If the Facility were not retired, the Parties expected it would continue to operate as a power generating facility.

d.    Under the Purchase Agreement, certain deliveries were made at closing including, from Purchaser, an Environmental Performance Deed of Trust ("Environmental DT") which is more fully described below, a Performance Deed of Trust ("Performance DT") which is also more fully described below, and from AES, notification regarding whether it was going to exercise the Option as provided in paragraph 3.1 of the of the Purchase Agreement to lease back the Real Property for the purpose of operating the Facility as a power generating facility (as it had been operated for many years by AES and, prior to AES, by Southern California Edison). If the Option were exercised, AES was also to provide upon closing its execution of the Ground Lease. Ultimately the Option language was changed to say that even if it were not timely exercised by AES, AES could still operate the power generating facility. This change rendered the 90-day notice requirement moot and/or void.

e.    Under the Ground Lease, the Term was defined as the later of sixty (60) days after the date upon which AES shall have obtained all Governmental Approvals required to decommission the Facility (in the Ground Lease, the "Shutdown Approval Date"), and the date on which all Shutdown Criteria have been achieved.

f.    Under the Purchase Agreement, the closing date for the sale of the Real Property and the adjoining land parcel was contracted to be October 5, 2018. For various reasons, the sale of the Real Property closed in stages in 2019 and 2020.

g.    The Real Property which had been leased back to Defendant AES Redondo Beach, LLC by the Debtor, is currently being operated as a power generating facility.

8.    <u>Authorized Transfer of Fractional Interests in Real Property</u>:

a.    On May 3, 2019, the Purchaser transferred or assigned all of its right, title and interest in and to the Purchase Agreement and the Real Property to 1112 Investment Company, LLC, a California Limited Liability Company, and to E.D. Flores, LLC, a California Limited Liability Company.

5

b.       Subsequent assignments of partial interests in the Real Property took place such that ownership in the Real Property now is held by tenants in common as follows:

(1)     9300 Wilshire LLC-21 (21.40%)

(2)     1112 Investment Company, LLC (18.45%)

(3)     E.D. Flores, LLC (19.85%)

(4)     9300 Wilshire Fee, LLC (10.00%)

(5)     David Dromy (3.75%)

(6)     1650 Veteran, LLC (10.02%)

(7)     Outdoor Billboard Company, LLC (1.58%)

(8)     BH Karka, LLC (2.60%)

(9)     5th Street Investment Company, LLC (4.45%)

(10)    505 Investment Company, LLC (1.45%)

(11)    SLH Fund, LLC (3.45%)

(12)    Peak Alcott, LLC (3.00%)

As shown above, hereinafter the owners of the Real Property shall be referred collectively as the "Joint Owners."  Each of the Joint Owners has authorized Plaintiff to assert its claims as described in this Complaint.

9.      <u>First Amendment to Purchase and Sale Agreement</u>:

a.       The First Amendment to the Purchase Agreement ("First Amendment") was entered into as of April 15, 2019.  It recites Joint Owners were to consummate a "Final Closing" (as defined in the Purchase Agreement) by March 31, 2019.  When Joint Owners were unable to timely fulfill this commitment, the Parties elected to amend the Purchase Agreement and entered into the First Amendment.  A true and correct copy of the First Amendment is attached hereto as **Exhibit "B"** and is incorporated herein by this reference.

b.       Under the First Amendment, AES waived the alleged default arising from the failure to meet the Final Closing date as specified in the Purchase Agreement.  AES further agreed to  postpone the Final Closing Outside Date to May 30, 2019, provided Purchaser make a payment of $2,000,000 on or before May 3, 2019.  In the same First Amendment, the Purchaser was given

the option to postpone the Final Outside Closing Date to July 19, 2019, in exchange for an additional payment of $4,000,000 to be made on or before May 30, 2019.   And  to postpone the Final Closing Outside Date to August 30, 2019, a payment of $6,000,000 had to be made by July 19, 2019.

c.      Interest at the rate of seven percent (7%) per annum was to accrue on the sum of $41,000,000 (which sum was deemed to be a portion of the Final Closing Payment) less any Extension Fee(s) paid as described in subparagraph (b), above.  Such interest would accrue from and after August 1, 2019 so long as any portion of the sum described in this paragraph remained outstanding.

d.      The purchase price for the Real Property was increased from $50 Million to $55 Million.  Section 2.4(c) of the Purchase Agreement was amended to replace Forty-One Million Dollars ($41,000,000) with Forty-Six Million Dollars ($46,000,000), which became a portion of the payment(s) due to AES upon closing (the "Final Closing Payment" in the Purchase Agreement).

e.      There are references in the Purchase Agreement and the First Amendment to the Initial Closing Outside Date and the Final Closing.  The Initial Closing Outside Date refers to closing the sale of real properties separate from the Real Property on which the Facility sits, which other properties are identified as the "Sea Lab Parcels" and the "Sports Parking Parcels".  The Final Closing refers to the purchase of the Real Property which is identified as the "Main Property" in the Purchase Agreement and in the First Amendment.  To get extensions of the Final Closing date, the amounts identified in paragraph (b) above would need to be paid.

10.    <u>Second Amendment to Purchase and Sale Agreement</u>:

a.      The "Second Amendment to the Purchase and Sale Agreement" ("Second Amendment") is dated January 2020.  A true and correct copy of the Second Amendment is attached hereto as **Exhibit "C"** and is incorporated herein by this reference.

b.      The stated purpose of the Second Amendment was to address the option under the First Amendment, where the Joint Owners could postpone the Final Closing Outside Date to August 30, 2019 if they made a payment of a Third Extension Fee in the amount of Six Million Dollars ($6,000,000) on or before July 19, 2019 and, if the payment were not made, the Joint Owners were obligated to consummate the purchase of the Real Property by paying the remaining amounts

1   due and owing.  As acknowledged in the Second Amendment, this extension payment was not made.

2        c.    Joint Owners conceded that failing to pay the extension fee or close the

3   acquisition on or prior to July 19, 2019 constituted a breach of their obligations under the Purchase

4   Agreement.  However, if Joint Owners agreed to consummate the closing as provided in the Second

5   Amendment, the default would be waived.

6        d.    There was an acknowledgment by AES that Extension Fee Payments in the

7   aggregate amount of $11,977,705.63 had been made.  AES agreed to postpone the Final Closing

8   Outside Date to February 28, 2020 provided Joint Owners pay through Escrow the sum of Three

9   Million Four Hundred Seventy-Two Thousand, Two Hundred Ninety-Four Dollars and Thirty

10  Seven Cent ($3,472,294.37) on or before February 5, 2020, which payment was to be applied to the

11  Final Closing Payment due under the Purchase Agreement.

12       e.    The term "Deferred Payment" was amended to mean Thirty-Three Million

13  Fifty Thousand Dollars ($33,050,000) and the term "Purchase Price" was changed from Fifty-Five

14  Million Dollars ($55,000,000) to Thirty-One Million Nine Hundred Fifty Thousand Dollars

15  ($31,950,000).

16       f.    Section 2.4(d) and 2.4(e) of the Purchase Agreement were deleted in their

17  entirety and replaced with a new Section 2.4(d).  Under the new Section 2.4(d), within five business

18  days of execution of the Second Amendment, Joint Owners were required to pay AES $4,050,000,

19  $5,000,000 no later than February 27, 2020, and by no later than May 29, 2020, $24,000,000.

20       g.    Section 5 of the First Amendment was replaced in its entirety with language

21  that provided:

22            (1)    From 3/31/2019 through 12/31/2019 interest at the rate of seven (7%)

23  percent per annum shall accrue on the sum of $41,000,000 less the amount of any extension fees

24  paid and released to AES.

25            (2)    From 1/1/2020 through the date upon which the Deferred Payment (as

26  defined therein) has been paid in full, interest at the rate of five and one-half percent (5.5%) per

27  annum shall accrue upon the sum of $41,000,000 less (i) the amount of any Extension Fees (as

28  defined therein) paid or released to AES, and (ii) less the Final Closing Payment (as defined therein)

paid and released to AES, for so long as such sum remains outstanding.

      h.      There were multiple amendments made to the Ground Lease including:

      (1)      Base Rent (as defined therein) was to be changed each January to reflect changes in the Consumer Price Index published by the U.S. Department of Labor.

      (2)      Exhibit D to the Ground Lease which is attached to the Second Amendment specifies (i) the activities that may be undertaken to ascertain and remediate environmental issues with the Real Property, (ii) when those efforts may be undertaken, and (iii) the areas where this work may be done, typically with the cooperation and approval of AES.

A true and correct copy of the entirety of the Ground Lease, as amended, is attached hereto as **Exhibit "D"** and is incorporated herein by this reference.

11.    <u>Third Amendment to Purchase and Sale Agreement</u>: The Third Amendment to the Purchase and Sale Agreement ("Third Amendment") contains important provisions that are central to the dispute in this proceeding. A true and correct copy of the Third Amendment is attached hereto as **Exhibit "E"** and is incorporated herein by this reference.

      a.      Under the Purchase Agreement, the Parties contemplated the shut-down of the AES Facility on December 31, 2020. In contrast, under the Third Amendment, the Parties agreed to extend the deadline for the facility shut-down for an additional three years to December 31, 2023. The Parties further agreed to establish a funding commitment by AES of the orderly retirement of the Facility and to cover environmental remediation of the Real Property.

      b.      The projected date to secure approval of an extension to retire operations at the Facility was the earlier of November 30, 2020 or the date that the California State Water Resource Control Board ("CSWRCB") declares that it will not provide an approved extension. AES was then to deposit funds into escrow pursuant to the terms of an Escrow Agreement in form and substance reasonably satisfactory to the Parties. The funding of the Escrow account established with Chicago Title Company is governed by the following:

      (1)      If an extension of one year were granted through December 31, 2021, AES was to deposit in escrow $1,000,000 in 12 monthly installments within 30 days after the end of each calendar month, and no later than 45 days after the commencement of calendar year 2021,

1    an additional $500,000 ("Transmission Line Removal Fee");

2              (2)    If an Extension of two years were granted through December 31,

3    2022, AES was to deposit into escrow $4,500,000 paid in equal monthly installments within 30 days

4    after the end of each month during such calendar year and, within 45 days after the start of the

5    calendar year, another $500,000 (2022 Open Space Planning Fee);

6              (3)    If and Extension of three years were granted through December 31,

7    2023, and if the Facility were subject to a resource adequacy or other market-based contract ("RA

8    Contract") with a California load serving entity ("LSE") for all or any portion of 2023, then starting

9    with the first month in which AES receives RA Contract revenue in 2023 and continuing until post

10    December 31, 2023, AES is to deposit into escrow $6.5 Million for the calendar year payable in

11    equal installments within 30 days after the end of each month.  However, if AES is required to

12    operate pursuant to a Reliability Must Run, Capacity Procurement Mechanism (as defined in the

13    California Independent Operator System tariff or any successor tariff) rather than an RA Contract

14    with an LSE, the Facility was not to be deemed subject to an RA Contract or an LSE.  Regardless,

15    in no event shall there be paid less than $4,225,000 and, no later than 45 days after the

16    commencement of calendar year 2023, an additional $1,000,000 ("Open Space Planning Fee").

17         The designated payments identified above all pertain to the Real Property.  The payments

18    for calendar year 2021 and 2022 are past due, and there are payments due and coming due for

19    calendar year 2023.  AES has not made any of these payments.

20              c.    If Joint Owners do not make all Deferred Payments required by Section

21    2.4(d) of the Purchase Agreement, or a Purchaser Default (as defined in the Purchase Agreement)

22    otherwise exists, then AES is not obligated to fund the escrow.  However, if AES fails to deposit

23    funds to the Post Close Escrow as required, then the Joint Owners may set off the amount of such

24    shortfall against funds due to AES under the Deferred Payment provisions.

25              d.    The Purchase Price in the Agreement was amended from $31,950,000 to

26    $33,000,000.

27              e.    The "Final Closing Outside Date" was changed to March 27, 2020 provided

28    Purchaser pay $6,268,813.28 on or before March 17, 2020.  As of Final Closing, Purchaser shall

1  have delivered $37,000,000.

2          f.      Section 2.4(d) of the Purchase Agreement includes the following:

3              (1)      An acknowledgement that on February 10, 2020, Joint Owners paid

4  AES $4,000,000[1];

5              (2)      The Final Deferred Payment of $28,000,000 is to be paid as follows:

6                  (a)      If an approved extension is granted through the end

7  of 2021, there shall be paid directly to AES:

8                      (i)      $10 Million by 12/10/2020; and

9                      (ii)      $18 Million by 11/30/2021.

10                  (b)      If an approved extension is granted through end of

11  calendar year 2022, Purchaser is to pay to AES:

12                      (i)      $7,000,000 by 12/10/2020;

13                      (ii)      $9,000,000 by 11/30/2021; and

14                      (iii)      $12,000,000 by 11/30/2022.

15                  (c)      If an approved extension is granted through end of

16  calendar year 2023, Purchaser is to  pay to AES:

17                      (i)      $5,000,000 by 12/10/2020;

18                      (ii)      $6,500,000 by 11/30/2021;

19                      (iii)      $7,500,000 by 11/30/2022; and

20                      (iv)      $9,000,000 by 11/30/2023.

21          g.      <u>Rent Under Ground Lease</u>:  Rent shall be $1 for each month of the Term as

22  described in Section 3.01 of the Ground Lease until such time as all Deferred Payments and Late

23  Interest Payments are made.  No rental payments were made by AES Redondo Beach until after the

24  filing of Debtor's Chapter 11 case.

25

26

27  _____

[1] This sum constitutes payments identified as public benefits which served as mitigation for the

28  extended use of the Power Generating Facility.

h.    If an Approved Extension is obtained, then Section 5 of the First Amendment, as amended by Section 5(f) of the Second Amendment shall be replaced by language in the Third Amendment as follows:

(1)    From 3/31/3019 through 12/31/2019 interest at the rate of 2% per annum shall accrue on the sum of $41 Million, less the amount of any Extension Fees that have been paid and released to AES from and after April 1, 2019;

(2)    From and after 1/1/2020 through the date upon which the Deferred Payments have been made in full, interest at the rate of 1.0% per annum shall accrue on the sum of $41 Million, less the amount of any Extension Fees paid and released to AES, and less the Final Closing Payment that has been paid and released to AES and for so long as such sum remains outstanding.

12.    <u>Open Space Covenant and Option Offer Agreement</u>:  The Open Space Covenant ("Covenant") is dated March 26, 2020.  A true and correct copy of the Covenant is attached hereto as **Exhibit "F"** and is incorporated herein by this reference.

a.    The parties to the Open Space Agreement are the Joint Owners, identified as the "Grantors" in the Open Space Agreement and AES Redondo Beach, L.L.C., as Grantee.  There are no third party beneficiaries to the Covenant.

b.    The purpose of the Open Space Agreement was to address utilization of the Power Generating Facility by AES for the period of time, if any, the California State Water Resources Control Board ("Water Board") extended the operations of the Power Generating Facility past December 31, 2020.  The Parties contemplated this extension could be for one, two or three years, but in no event would the Facility be permitted to operate past December 31, 2023. Ultimately, through two separate acts, operations were extended to December 31, 2023, representing a full three year extension as contemplated in the Third Amendment.

c.    Depending upon the length of the extension, the Plaintiff was to offer a portion of the Real Property as open space to the City of Redondo Beach for use as "…parks, plazas, lawns, landscaped areas, decorative plantings, roof decks, balconies, pedestrian ways…" *See ¶1* of Exhibit F.

(1)    If the extension were granted to 12/31/2021, the Joint Owners were to dedicate at least 4 acres for Public Open Space.

(2)    If the extension were granted to 12/31/2022, the Joint Owners were to dedicate at least eight additional acres for Public Open Space.

(3)    If the extension were granted to 12/31/2023, the Joint Owners were to dedicate at least thirteen additional acres for Public Open Space.  Joint Owners were to designate the Public Open Space no later than its receipt of entitlements for the development of the remainder of the Real Property.

d.    Under certain conditions set forth in paragraph 5 of the Open Space Agreement, the Joint Owners were to provide the City of Redondo Beach with an option to purchase a certain number of acres of the Real Property up to 15, as shown on Exhibit B to the Open Space Agreement for a price of $2 Million per acre.

e.    Additional terms and conditions of the Option were:

(1)    If remediation of the Real Property or any portion thereof shown on Exhibit B to the Open Space Agreement had not occurred by the time of exercise of the City purchase option, then one-half of the purchase price paid by the City of Redondo Beach would be held in escrow after the sale closing until the remediation was completed.

(2)    The Power Generating Facility could and would not operate past December 31, 2023.

(3)    The City of Redondo Beach was to assist the Joint Owners in the regulatory and legal approvals related to dewatering of the Wetlands Property so that environmental testing and remediation thereupon may take place.

(4)    Following closing of a sale to the City, the City of Redondo Beach was to covenant that the "Designated City Option Lands" shall be confined to usage and designation as public open space.

f.    As described below, through actions of the City of Redondo Beach, the City repudiated and rejected the provisions of the Open Space Agreement relating to Public Open Space and the option to purchase, and rendered such provisions null and void.

13.    <u>Purchase, Sale and Easement Modification Agreement</u>:  The Purchase, Sale, and Easement Modification Agreement ("Easement Modification Agreement") is attached hereto as **Exhibit "G"** and is incorporated herein by this reference.  It is dated September 2000.  The parties to the Easement Modification Agreement are Southern California Edison Company ("SCE")  and AES King Harbor, LLC, a Delaware Limited Liability Company ("King Harbor" or "Buyer").  The Easement Modification Agreement was executed and acknowledged by AES along with a Memorandum of Amended Option Agreement.  Under the Easement Modification Agreement, SCE as seller and King Harbor as purchaser agreed to sell to King Harbor certain blanket easements described in the "Grant Deed" from SCE to AES dated May 15, 1998 and recorded in the real property records of the County of Los Angeles as instrument number 98-829453.  SCE was also the owner of certain "Personal Property" located on the Real Property.

a.    To quote from Recital D on page 1 to the Easement Modification Agreement, "(B)uyer and Seller desire that Seller sell the Personal Property to Buyer and that Buyer cause AES Redondo and Seller to terminate or modify the Seller's Easements over the Real Property and terminate Seller's option to purchase the fee estate in and to the Real Property on the terms and conditions set for in this Agreement."

b.    Paragraph 1.1 of the Easement Modification Agreement provides as follows: "Seller agrees to sell the Personal Property from Seller for the Cash Consideration (as hereinafter defined) on the Closing Date (as hereinafter defined), and otherwise on the terms and conditions set forth in this Agreement.  For the purposes of this Agreement, 'Personal Property' means Seller's oil tanks and any and all equipment used in connection with such tanks located on the Real Property.  Buyer and Seller shall mutually agree on a legal description of the Real Property on or before September 30, 2000 which legal description shall replace Exhibit A to this Agreement (the 'Legal Description')".

c.    Paragraph 1.2 of the Easement Modification Agreement provides as follows: "Seller shall execute, and Buyer shall cause AES Redondo to execute an amendment in form and substance reasonably satisfactory to both Seller and Buyer (the 'Amended Grant Deed') amending the Original Grant Deed to terminate or modify the Easements over the Real Property, and reserving

1    additional easements over the Real Property if reasonably necessary for Seller's continued operation

2    of Seller's switchyard and other improvements located on the Option Land (as defined in the Original

3    Grant Deed) other than the Real Property (the 'Easement Modification').  The Amended Grant Deed

4    shall be mutually agreed upon by both Buyer and Seller no later than September 30, 2000 and

5    attached to this Agreement (the Easement Modification Agreement) as Exhibit 'B'."

6           d.      Paragraph 1.3 of the Easement Modification Agreement provides as follows:

7    "Seller shall execute and Buyer shall cause AES Redondo to execute, an amendment in form and

8    substance reasonably satisfactory to both Seller and Buyer (the 'Amended Option Agreement')

9    amending the Option Agreement between Seller and AES Redondo dated May 15, 1998, a

10   memorandum of which was recorded in the real property records of the County of Los Angeles as

11   instrument No. 98-829456, to exclude the Real Property from the Option Agreement (the 'Option

12   Modification') which Amended Option Agreement shall be mutually agreed upon by both Buyer

13   and Seller no later than September 30, 2000 and attached to this Agreement as Exhibit 'C'.

14   Additionally, Seller shall execute, and Buyer shall cause AES Redondo to execute, a memorandum

15   of such Amended Option Agreement (the 'Memorandum of Amended Option Agreement') which

16   shall be delivered to escrow pursuant to Section 5.2 and recorded in the real property records of the

17   County of Los Angeles."

18          e.      Paragraph 1.5 of the Easement Modification Agreement provides for

19   payment of consideration for the purchase from Buyer to Seller in the amount of $4,500,000.

20          f.      Under the Purchase Agreement and each of the amendments to the Purchase

21   Agreement, AES was obligated to obtain from SCE certain consents as provided in the Easement

22   Modification Agreement.  AES nonetheless failed to satisfy its obligations, in breach of its

23   commitments under the Purchase Agreement and each of the amendments thereto.  This promise

24   was a condition precedent to closing and AES never fulfilled its obligations with respect to this

25   contractual requirement.  Without reference to other claims in this Complaint, the failure of this

26   condition precludes AES from accruing interest on the unpaid balance due to it under the Purchase

27   Agreement and Amendments thereto.

28

14.     Environmental Performance Deed of Trust and Performance Deed of Trust:

a.      For purposes of securing Joint Owners' performance under the Purchase Agreement and the First, Second and Third Amendments to the Purchase Agreement, Plaintiff executed in favor of AES two separate deeds of trust.  The first deed of trust  was the "Environmental Performance Deed of Trust" which is attached hereto as **Exhibit "H"** and is incorporated herein by this reference.  The Environmental Deed of Trust secures the performance by 9300 Wilshire and the Joint Owners of the "Secured Environmental Obligations."   These obligations are defined in paragraph 2 of the Environmental Deed of Trust as the commitment: (i) to achieve Site Closure in accordance with the terms and provisions of the Agreement[2]; and (ii) to indemnify AES for any environmental liabilities pursuant to Sections 13.1(a)(ii) and (iii) of the Purchase Agreement. Section 13.1(a)(ii) and (iii) refer to the commitments of the owner of the Real Property to indemnify AES against liabilities attributable to Hazardous Substances on the Real Property and the failure of the Real Property to comply with the Environmental Laws resulting in injury or damage to any Person or property, etc.

b.      The Performance Deed of Trust is to secure the payment obligations of 9300 Wilshire for the unpaid portion of the purchase price of the Real Property from AES.

15.     Amended and Restated Environmental Agreement ("Amended Environmental Agreement")

a.      The parties to the Amended Environmental Agreement are Southern California Edison Company ("SCE") and AES King Harbor, LLC, a Delaware Limited Liability Company.  A true and correct copy of the Amended Environmental Agreement is attached hereto as **Exhibit "I"** and is incorporated herein by this reference.

b.      A recital in the Amended Environmental Agreement states SCE, AES King Harbor and AES Redondo Beach LLC are parties to an Environmental Agreement dated December 4, 2000 which designates responsibility for environmental liabilities and specifies AES Redondo's right to permanently retire the "220 kv Switchyard".   The recitals also describe an "Indemnity and

---

[2] This refers to the Purchase and Sale Agreement which is attached as Exhibit A to this Complaint.

1   Release Agreement" to which AES Redondo and SCE are parties, which agreement addresses the

2   release of certain claims of AES Redondo against SCE and indemnification obligations of each of

3   the parties.

4          c.     The indemnification running from AES King Harbor (including AES

5   Redondo) to SCE pertains to environmental liabilities arising after the "Tank Farm Closing Date"

6   (as defined in the Amended Environmental Agreement) with respect to "Hazardous Materials" (as

7   defined in the Amended Environmental Agreement) relating to the Retention Basin Parcel and the

8   Tank Farm Parcel but only to the extent that: (1) such claims arose on Off-site Property as a result

9   of Post-Closing Off-site Release of Hazardous Materials to the extent that the Hazardous Materials

10   (x) did not exist on the Property prior to the Tank Farm Closing Date, or (y) existed on the Property

11   prior to the Tank Farm Closing Date, but the Post-Closing Off-site Release with respect thereto

12   would have been prevented with the exercise of Appropriate Diligence, or (2) on the Property.

13          16.    <u>Extension of Operations of Power Generating Facility at Real Property</u>:  With regard

14   to the Third Amendment, and the terms and conditions that apply to the facts and claims of this

15   Complaint, the following provisions are most relevant:

16          a.     Paragraph 2(a) of the Third Amendment provides on the earlier of (1)

17   issuance of an "Approved Extension" prior to November 30, 2020, and (2) the date upon which the

18   California Water Resource Control Board declares that it will not provide an Approved Extension,

19   funds shall be delivered by AES to an escrow established to pay for environmental remediation to

20   the Real Property.  The amount of the funds to be delivered is tied to whether the extension was

21   issued for one, two or three years.

22          b.     Depending upon the length of the extension to operate the power generating

23   facility, payments from Plaintiff on an outstanding indebtedness of $28 Million are to be paid in

24   differing increments each year.

25          c.     Important to the provisions of this complaint objecting to the secured claim

26   of AES is the language of the Third Amendment at paragraph 4(e) which states with a timely

27   Approved Extension, interest on the indebtedness from Plaintiff to AES accrues at two percent (2%)

28   per annum from 3/31/2019 to 12/31/2019, and at one percent (1%) per annum from 1/1/2020

1  forward.  Conversely, without an Approved Extension, interest shall accrue as provided in Section

2  5 of the First Amendment.  Interest in the First Amendment at paragraph 5(f) accrues at the rate of

3  seven percent (7%) per annum.  All interest accruals are calculated on the sum of $41,000,000.

4      17.    An extension for one year to operate the Facility by the Water Board was timely

5  granted prior to 11/30/2020, which constituted an Approved Extension under the Third Amendment.

6  Without limitation, on September 1, 2020 the Water Board extended the operation of the Facility

7  and this decision thereafter was timely enrolled in the Office of Administrative Law which made

8  such decision final.

9      18.    A lawsuit filed by the City of Redondo Beach in 2020 was not an appeal of the Water

10  Board's decision and did not change the finality thereof.  First, the City of Redondo Beach failed to

11  exercise its administrative remedies.  Instead, it chose to unsuccessfully challenge the extension on

12  procedural grounds.  Two, AES acknowledged the finality of the extension.  After November 30,

13  2020, AES promoted by public disclosures the benefits of the continued operation of the Power

14  Generating Facility without any mention of a lack of finality of the extension.  While the City of

15  Redondo Beach protested the extension, the protest did not alter the finality of the extension, and

16  AES enjoyed the full benefits thereof.  Subsequently, the extension was modified by adding two

17  additional years, thereby setting a retirement date of December 31,  2023.  As a result, AES has

18  continued to operate the Facility from and after January 1, 2021 and will be allowed to operate for

19  three years from that date, exactly as was contemplated in the Third Amendment.  The challenge by

20  the City of Redondo Beach constituted a repudiation of the Covenant and grounds to rescind it.

21      19.    The Purchase Agreement as well as the First, Second, and Third Amendment thereto,

22  including the Open Space Covenant and Option Offer Agreement, must be interpreted in the

23  framework in which these documents were drafted.  The facts and assumptions underlying execution

24  of the Purchase Agreement were as follows: (a) for a period of more than one hundred (100) years,

25  a Power Generating Facility was operating on the Real Property, a Facility with at least two different

26  operators, Southern California Edison and Defendant AES Redondo Beach, LLC or one of its

27  affiliates; (b) the Power Generating Facility is an immense collection, consisting of multiple

28  buildings, totaling hundreds of thousands of square feet, all of which will soon be obsolete; (c)

1   Plaintiff purchased the Real Property with the intent to develop it, a significant undertaking; (d) the

2   continued operation of the Real Property as a Power Generating Facility was the subject of great

3   controversy by the City and residents of Redondo Beach; (e) despite the strong local sentiment to

4   close the Facility, the California Water Control Board needed the facility to continue operations past

5   the December 31, 2020 closing date; and (f) the Parties anticipated the possibility of continued

6   operations past December 31, 2020 and for that reason included provisions in the Purchase

7   Agreement to address that potential, including leaseback of the Real Property under a Ground Lease.

8       20.     The Parties designed a concept tied to the length of extension(s) granted by the Water

9   Board, with the goal to seek an extension of three years.  On September 1, 2020, a one year extension

10  was granted and then in October 2021, an additional two year extension was issued.  Effectively,

11  the extension granted was three years, exactly what the Parties sought.  However, the Water Board

12  did not issue the extension in exactly the manner set forth in the Third Amendment.  Namely, the

13  Parties anticipated a single extension of one, two or three years.  Instead, the three year extension

14  was granted in two stages.  The combined extensions should be interpreted as a three year extension

15  effective the date the first extension was granted.

16      21.     Plaintiff is informed and believes AES takes issue with whether the extensions were

17  final prior to November 30, 2020.  First, that date is of no material consequence and should be

18  ignored.  Second, even if not ignored, the first extension was final prior to that date.  The Parties

19  agreed an extension is to be deemed final when it is recorded in the Administrative Office, which in

20  this instance took place prior to November 30, 2020.  The October 2021 extension, which for all

21  practical purposes was an amendment of the first extension, was also recorded in the Administrative

22  Office and was not challenged, by appeal or otherwise.  The two stage extension should therefore

23  be deemed a three year extension, and final prior to November 20, 2020.

24      22.     By reason of the three year extension, AES has been given the right to operate the

25  Power Generating Facility for a an additional three year period, exactly as the Parties contemplated

26  when they entered into the Third Amendment.  For more than two years, Plaintiff inquired of AES

27  how it interpreted the length of the extension under the Third Amendment.  Despite its public

28  representations, Defendant refused to  respond to this question for more than two years, all the while

1  enjoying the benefits of the three year extension, including yearly financial remuneration from the

2  State of California in the approximate amount of $40 Million.  Not until the fall of 2022 did AES

3  for the first time take the position that no Approved Extension was ever granted.  AES is estopped

4  to assert this position.

5       23.    On the basis of its unjust and inequitable position, Defendant further takes the

6  position that interest on the indebtedness due and owing by the Joint Owners had accrued on the

7  sum of $41,000,000 at the higher rates set forth in the Purchase Agreement and the Second

8  Amendment.  Presumably, AES will also contend it owes no money for environmental remediation

9  and the modified payment arrangements set forth in Section 2.4(d) of the Third Amendment do not

10  apply.  Accordingly Plaintiff requires a declaration of the rights of Plaintiff and AES under the

11  Purchase Agreement and each of the amendments thereto.

12       24.    On March 5, 2023, AES in a declaration filed in this Case by Mark Miller, the

13  President and CEO of AES [Docket No. 15] asserted the "balance owed [by Joint Owners] to AES,

14  inclusive of accrued interest and fees, has grown to over $38 million."

15  **FIRST CAUSE OF ACTION**

16  **(Declaratory Relief)**

17       25.    Plaintiff incorporates each and every allegation of paragraphs 1 through 24, above,

18  including subparagraphs and subparts thereof, as if set forth in full hereat.

19       26.    A controversy exists between Plaintiff and AES arising from the Purchase

20  Agreement and the Amendments thereto, as follows, without limitation:

21           a.    Approved Extension.  Plaintiff contends an Approved Extension of three

22  years (to December 31, 2023) was timely issued under the Third Amendment, thereby triggering a

23  number of provisions of the Third Amendment.  In particular, Plaintiff asserts:

24           (1)    The provisions of paragraph 2(a)(iii) apply to the funding

25  requirements of AES to the Post Close Escrow;

26           (2)    The provisions of paragraph 4(d) [modifying the terms of Section

27  2.4(d) of the Purchase Agreement], are triggered so that the payment obligations of Purchaser are

28  governed by Section 2(d)(ii)(C);

(3)    The provisions of paragraph 4(e)(ii) govern the accrual of interest in replacement of Section 5 of the Purchase Agreement and Section 5(f) of the Second Amendment.

b.    <u>Covenant</u>.  The provisions of paragraph 3 are of no force and effect and the Open Space Covenant and Option Offer Agreement is null and void and must be removed from title.

27.    Plaintiff is informed and believes AES disputes the position asserted by Plaintiff in paragraph 26 and asserts that an Approved Extension was not issued and the Covenant is an enforceable encumbrance on title to the Real Property.

28.    Plaintiff requires a judicial declaration that it's interpretation of the Third Amendment as set forth in paragraph 26 above is the correct interpretation and the Parties must be bound by the implications arising therefrom.

**SECOND CAUSE OF ACTION**

**(Breach of Contract)**

29.    Plaintiff incorporates each and every allegation of paragraphs 1 through 28, above, including subparagraphs and subparts thereof, as if set forth in full hereat.

30.    AES has defaulted in the terms of the Purchase Agreement and Amendments thereto by no less than the following:

a.    Failing to give Joint Owners access to the Real Property so that they may conduct inspections and investigations to determine the extent of contamination, if any, on the Real Property and develop a plan for remediation.

b.    Failing to obtain from SCE certain consents as provided in the Easement Modification Agreement in breach of its commitments under the Purchase Agreement and each of the Amendments thereto.

c.    Miscalculating the amount owing under the Environmental Performance Deed of Trust and the Performance Deed of Trust, and taking action against Plaintiff in reliance on incorrect calculations.

d.    Failing to make any of the required payments to the Post Close Escrow account established to hold the funds to pay for certain specified environmental remediation.  As described in paragraphs 11(b)(1), 11(b)(2) and 11(b)(3), above, certain environmental remediation

1   payments were to be made in 2021, 2022, and 2023 depending upon the length of the extension

2   granted to operate the Power Generating Facility by the Water Board.  Ultimately, the extension to

3   operate the Power Generating Facility was three years.

4           e.      Failing to assign to Plaintiff the Reciprocal Easement Agreement, between

5   SCE and AES.

6           f.      Failing to assign to Plaintiff the Correct Action Consent Agreement dated

7   September 8, 2016 by and between the California Department of Toxic Substances Control and

8   AES.

9           g.      Failing to comply with its obligations under Schedule 2.3 to the Purchase

10  Agreement, as well as its obligations under Schedule 2.1(a)(iii) and Schedule 2.1(b)(iii).

11          h.      Litigation Matters that were to be assigned to Plaintiff pursuant to Schedule

12  2.3 and Schedule 7.2(a) include litigation "… resulting from the July 31, 2015 filing of the Verified

13  Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief challenging the

14  adoption of Ordinance No. 31134-15 titled 'An Ordinance of the City Council of the City of Redondo

15  Beach Adopting Limitations on electricity Generating Facilities by Adding Redondo Beach

16  Municipal Code Title 10, Chapter 7 and Adopting Modifications to Title 10, Chapter 2 of the

17  Redondo Beach Municipal Code …' " This also includes ongoing proceedings resulting from the

18  September 8, 2015 summons delivered to the California Coastal Commission (as Defendant) from

19  AES Southland Development LLC and Seller (AES) regarding the California Coastal Commission's

20  classification of 5.93 acres of the Redondo Beach Generating Station site as Commission-

21  jurisdiction wetlands (the "CCC Proceedings").  Defendant has breached the Purchase and Sale

22  Agreement by failing to comply with its contractual obligations imposed by the Purchase and Sale

23  Agreement and Schedule 2.3 and 7.2(a) of the Agreement.

24          i.      Failing to comply with the provisions of Section 5.1(b)(iii) of the Purchase

25  and Sale Agreement stating "Seller shall have received (i) all Governmental Approvals required by

26  Seller under Governmental Rules and as set forth in Schedule 5.1(a)(iii) hereto, for the

27  consummation of the transactions contemplated by the Purchase and Sale Agreement with respect

28  to the Initial Closing Assets and the Related Agreements for the Initial Closing and such

1  governmental approvals shall be in full force and effect."

2       31.     By reason of the forgoing breaches, Plaintiff has been damaged in an amount
3  currently estimated to be no less than $7,000,000.  Plaintiff reserves the right to amend it claim for
4  damages when the same have been accurately ascertained.

5  **THIRD CAUSE OF ACTION**

6  **(Objection to Claim/Offset Rights/Determination of Amount Owing)**

7       32.     Plaintiff incorporates each and every allegation of paragraphs 1 through 31, above,
8  including subparagraphs and subparts thereof, as if set forth in full hereat.

9       33.     AES asserts a claim in this Case in excess of $38,000,000.  Plaintiff objects to the
10  claim asserted and contends, based on the forgoing statements and claims for damages, the amount
11  owing is overstated by at least $15,000,000.

12       34.     Plaintiff is entitled to offset against any allowed claim held by AES all damages
13  suffered by reason of breaches by AES of the Purchase Agreement and Amendments thereto.

14       35.     Plaintiff requires a determination of the allowable amount of the AES claim as it
15  requires this determination to present its plan of reorganization.

16  / / /
17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

NOW THEREFORE, Plaintiff requests an order from the Court:

A.      Declaring Plaintiff's interpretation of the Third Amendment and Plaintiff's performance thereunder is correct as set forth hereinabove;

B.      Finding AES has breached the Purchase Agreement and the Amendments thereto and award damages to Plaintiff in the amount of $7,000,000 or such other amount as may be proven;

C.      Disallowing any claim asserted by AES in this Case and fixing the allowable amount of its claim in an amount to be proven;

D.      Awarding Plaintiff attorneys' fees and costs incurred in connection with this action; and

E.      Awarding such other additional and further relief as is just and proper.

DATED:  May 30, 2023                    Respectfully submitted,

**GREENSPOON MARDER LLP**


By:    _/s/ Victor A. Sahn_____
            Victor A. Sahn
            Alan G. Tippie
            Attorneys for 9300 Wilshire LLC